IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN R. CORY, SR.                    :
                                     :
v.                                   :   Civil No. WMN-06-2694
                                     :
WHISMAN, GRYGIEL &                   :
GIORDANO, P.A. <u>et al.</u>             :


<u>MEMORANDUM</u>

Before the Court is the motion of Defendants, Whisman,

Grygiel & Giordano, P.A., Whisman, Giordano & Daney, LLC, B.

Christopher Daney, and James A. Whisman, Jr., to dismiss several

counts of the Amended Complaint.  Paper No. 11.[1]  Plaintiff, John

R. Cory, Sr., has opposed the motion and Defendants have

replied.[2]  Upon a review of the pleadings and applicable case

law, the Court determines that no hearing is necessary (Local

Rule 105.6) and that Defendants' motion will be granted in part

---

[1]  On March 21, 2007, this Court issued a letter to
Plaintiff requesting a more substantial statement regarding the
appropriateness of federal jurisdiction in this matter.  While
Plaintiff claims that the Amended Complaint raises a question of
federal law, the Court need not reach this issue.  Upon review of
the allegations, the Court finds that, because the claimed
damages satisfy the amount in controversy requirements of 28
U.S.C. § 1332, and because the alleged damages are personal to
the Plaintiff, a Maryland resident, diversity jurisdiction is
appropriate.

[2]  Plaintiff has filed a Motion for Leave to File Surreply,
alleging that Defendants raised new arguments in their Reply
brief.  Paper No. 14.  The Court will consider the Surreply in
accordance with Local Rule 105.2(a).  Additionally, on November
24, 2006, Defendants filed a Motion for a More Definite Statement
pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.
Paper No. 6.  Plaintiff replied by amending his Complaint to
alleviate the concerns raised by Defendants.  Paper No. 8.
Defendants' Motion for a More Definite Statement, therefore, will
be denied as moot.

and denied in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

John R. Cory, Sr. is the majority owner of AtlantiGas Corporation (AtlantiGas), Advantage Energy Marketing, Inc. (Advantage), and the sole proprietor of Darlington Properties (Darlington).  Near the end of 2002, Cory contacted Christopher Daney, an accountant at the firm of McBride & Shoppa, to retain Daney's assistance in filing tax returns for himself, AtlantiGas, and Advantage for the years 1999 through 2002.  Daney advised Cory that he would be leaving his current firm and joining the firm of Whisman, Grygiel & Giordano, P.A. (later known as Whisman, Giordano & Daney, LLC), and that, once at his new firm, he would assist Cory in preparing the returns.  In April of 2003, while still employed at McBride & Shoppa, Daney requested a retainer fee in the amount of $5,000.  AtlantiGas paid the fee, which Daney allegedly deposited into his personal checking account.

Cory alleges that, as part of their agreement, Daney agreed to provide each year's returns by the appropriate refund deadline, or to request an extension of time to file, preserving the opportunity to obtain a refund.  To memorialize this agreement, on January 31, 2004, Daney, then employed at Whisman, Grygiel & Giordano, P.A., sent Cory an engagement letter detailing the services to be provided and the correlating fees.

<u>See</u> Am. Compl., Ex. 8.[3]

Despite Daney's awareness of the IRS refund deadlines, Cory alleges that Daney failed to provide him with corporate tax returns until January of 2004 and failed to provide individual returns until March of 2004.  As a result of the untimeliness of the 1999 returns, the IRS and the Comptroller of Maryland disallowed Cory's claimed refunds.  Additionally, Cory claims that Daney completely failed to file the 2002 individual income tax return.  Had the return been filed, Cory alleges that it would have explained the existence of an erroneous Form 1099 which he received from Pepco Energy Services, Inc. (Pepco), attributing taxable income to him in excess of $2 million.[4]

The Amended Complaint alleges seventeen counts: separate claims of breach of contract against each Defendant with regard to the 1999 returns (Counts I-IV); separate claims of negligence against each Defendant with regard to the 1999 returns (Counts V-VIII); separate claims of breach of contract against each

_____

   [3] In an effort to further support his contention that Daney agreed to provide the returns by their refund deadline, Cory also attached to his Amended Complaint an affidavit which Daney entered in the Circuit Court for Harford County, Maryland in connection with an unrelated domestic matter to which Cory was a party.  <u>See</u> Am. Compl., Ex. 9.  In that affidavit, Daney stated that he expected to provide Cory with income and expense estimates for his pre-2002 tax returns by the IRS deadline of October 15, 2003.  <u>Id.</u>

   [4] Cory alleges that the Form 1099 reflected the principal and interest amount of a loan from Pepco to Cory which had subsequently been assigned to a third party.  Having not received Cory's 2002 individual return, in May of 2005, the IRS entered a substitute 2002 return for Cory which included a tax assessment based upon the amount reflected in the Form 1099.

3

Defendant with regard to the 2002 returns (Counts IX-XII);
separate claims of negligence against each Defendant with regard
to the 2002 returns (Counts XIII- XVI); and one claim of
conversion against Daney for the initial $5,000 retainer fee
(Count XVII).  In the instant motion, Defendants argue that each
claim of the Amended Complaint which incorporates Cory's 2002
returns must be dismissed because Cory is unable to demonstrate
any damages proximately caused by the alleged breaches of duty.
Further, Defendants contend that the claims against Defendant
Whisman must be dismissed because Whisman was not a party to the
contract in question and owed no duty to Cory.  Finally,
Defendants argue that the claim of conversion must fail under
applicable Maryland law.

## II. STANDARD OF LAW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure should not be granted unless "it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief." Conley
v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering such a
motion, the court is required to accept as true all well-pled
allegations in the Complaint, and to construe the facts and
reasonable inferences from those facts in the light most
favorable to the plaintiff.  See Ibarra v. United States, 120
F.3d 472, 473 (4th Cir. 1997).  "To survive [a] motion to
dismiss, Plaintiffs must have alleged facts that show that they
are entitled to relief on their substantive causes of action."

4

In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

## III.  DISCUSSION

### A.  Claims Against Defendant Whisman

Counts IV and XII allege that Defendant Whisman, in his individual capacity, had a contractual obligation to assist Cory and Daney in resolving a dispute regarding the invoices sent by Whisman, Grygiel & Giordano, P.A., listing the amounts owed for the preparation of the 1999 and 2002 returns.  Am. Compl. ¶¶ 87-91, 136-43.  Cory alleges that Whisman's contractual obligations arose when Cory copied Whisman on certain e-mails he had sent to Daney which noted inaccuracies and omissions from the invoices in question.  Cory also relies on a particular e-mail he sent directly to Whisman in which he expressed a preference to discuss billing matters with Whisman, or someone in the office other than Daney.  Id. at ¶ 65.  Whisman replied to that e-mail: "Sorry. But as I told you I am not, and don't intend to get, involved in your dispute with [Daney]."  Id.  Cory contends that Whisman's refusal to address and correct the allegedly inaccurate invoices of his firm render him liable under a breach of contract theory for all damages suffered as a result of the firm's failure to timely file Cory's 1999 and 2002 returns.  Additionally, in Counts VIII and XVI, Cory seeks to hold Whisman liable under a negligence theory for the same conduct, arguing that Whisman's failure to provide dispute assistance constituted a breach of a duty of care.

Cory fails to allege facts sufficient for a reasonable jury
to find that he entered into a contract with Whisman.  The
Amended Complaint contains no allegations that Whisman ever
intended to enter into a contract to assist in the resolution of
a dispute.  Additionally, nowhere in the allegations of the
Amended Complaint or in the lengthy exhibits does Cory submit
evidence of any contract formation between himself and Whisman.
But cf. Am. Compl. ¶ 13 (alleging that Daney agreed to assist
Cory in preparing the returns); Am. Compl., Ex. 8 (Engagement
letter signed by Daney on behalf of Whisman, Grygiel & Giordano,
P.A. to Cory confirming an agreement to prepare Cory's individual
returns for the years 1999 - 2003 (January 24, 2004)).  Cory's
theory that a contractual obligation arose because he had copied
Whisman on e-mails to Daney which complained of allegedly
inaccurate account invoices is unsupported by any legal
authority.  Further, Whisman's status as a principal in Whisman,
Grygiel & Giordano, P.A., does not make him personally liable for
alleged breaches of contract by the partnership.  See Hildreth v.
Tidewater Equipment Co., 838 A.2d 1204, 1209 (Md. 2003) (noting
that the law in Maryland is that "shareholders generally are not
held individually liable for debts or obligations of a
corporation except where it is necessary to prevent fraud or
enforce a paramount equity") (internal citations omitted).[5]

---

[5]  Cory argues that Whisman's review of the invoices
complained of was required to prevent fraudulent billing, and,
therefore, Whisman should be held personally liable for the
obligations of the firm.  Opp'n Mem. 10.  In the Amended
Complaint, however, there is no claim of fraud, nor are facts

Similarly, Counts VIII and XVI fail to allege facts upon which a jury could reasonably find Whisman owed Cory a duty of care, the breach of which could result in liability under a negligence theory.  See E.F. Hutton Mortg. Corp. v. Pappas, 690 F. Supp. 1465, 1470 (D. Md. 1988) (finding that a claim of negligence against an accountant  requires a showing of "(1) a duty owed to [him]; (2) a breach of that duty; (3) a legally cognizable causal relationship between the breach of duty and the harm suffered; and (4) damages").  Cory provides no legal support for his contention that Whisman owed a separate, personal duty of care to Cory with regard the billing dispute between Cory and Daney.  Further, Cory fails to offer any facts which would support disregarding the corporate structure and allowing personal tort liability against a corporate officer.  See Bart Arconti, 340 A.2d at 235; see also Turner v. Turner, 809 A.2d 18, 62 (Md. Ct. Spec. App. 2002) (noting that the party seeking to pierce the corporate veil bears the burden of proof).  Thus, each of Cory's claims against Whisman will be dismissed.

    B.  The 2002 Returns

    As referenced above, to state a claim for negligence against an accountant, a plaintiff must show: "(1) a duty owed to [him]; (2) a breach of that duty; (3) a legally cognizable causal relationship between the breach of duty and the harm suffered;

---

alleged which would support such a claim.  See Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 340 A.2d 225, 235 (Md. 1975) (finding that the corporate entity will not be disregarded where fraud is not alleged and the evidence fails to support a finding of fraud or the need to enforce a paramount equity).

and (4) damages." <u>E.F. Hutton Mortg. Corp.</u>, 690 F. Supp. at 1470.  Defendants argue that their alleged failure to timely prepare and file Cory's 2002 returns could not have proximately caused Cory's claimed damages.  Thus, Defendants claim that Counts IX, X, XI, XIII, XIV, and XV, each of which is predicated on the alleged mishandling of the 2002 returns, must be dismissed.[6]

Cory contends that, because of Defendants' failure to file his 2002 return, on May 23, 2005, without his knowledge, the IRS filed a substitute return on his behalf in which over $2 million was erroneously reported as income.  The tax owed, interest, and penalties resulting from that income are outstanding and continually increasing.[7]  Believing the IRS had mistakenly filed the substitute return, on August 9, 2006, Cory reviewed his filing history in the IRS offices in Baltimore.  There he

---

[6] Because all claims asserted against Defendant Whisman will be dismissed, the Court will use the term "Defendants" in this section to refer to the remaining Defendants in this action. Further, because Counts XII and XVI will be dismissed on separate grounds, the allegations of those counts will be omitted from discussion in this section.

[7] Additionally, Cory alleges damages stemming from an IRS lien which has been recorded against his property.  He claims that the lien has prevented the refinancing of his home mortgage and has prevented him from reestablishing employment for at least five years, resulting in damages exceeding $1 million.  At this stage of the litigation, the Court offers no opinion as to whether these damages should be precluded from jury consideration as a matter of law as beyond the scope of proximate causation.  <u>See</u> <u>Suburban Trust Co. v. Waller</u>, 408 A.2d 758, 766 (Md. Ct. Spec. App. 1979) (noting that, as to the question of proximate cause, "[i]t is where the evidence adduced and the inferences deducible therefrom admit of but one conclusion that the matter may be decided by the court as a matter of law").

learned, allegedly for the first time, that his 2002 return had never been filed.  On October 15, 2006, Cory filed an original 2002 return which correctly classified the loan amount as non-income, however, he contends that the IRS is unlikely to accept that return because it was filed beyond the required IRS deadline.  See 26 U.S.C. § 6213(a) (providing a taxpayer with 90 days to reply to a Notice of Deficiency).

Defendants argue that whether Cory owes taxes and penalties in accordance with the terms of the substitute return filed by the IRS depends upon whether the IRS accepts Cory's untimely 2002 return which he filed in October of 2006.  Further, Defendants raise the possibility that the income listed on the Form 1099 is properly classified as income to Cory.  In that scenario, Cory would simply owe the tax which the IRS is attempting to collect, and, Defendants argue, would have suffered no damages as a result of the failure to timely file the 2002 return.  Finally, Defendants contend that, if the Form 1099 contained an erroneously listed income amount, Cory's appropriate recourse would be against Pepco, the company that issued the form, not against Defendants.

In Maryland, "[o]rdinarily, the question of whether causation is proximate . . . is a matter to be resolved by the jury[;] . . . [o]nly if the evidence can lead to no other conclusion, can the matter be decided as a matter of law." May v. Giant Food, Inc., 712 A.2d 166, 175 (Md. Ct. Spec. App. 1998).  Taking the facts presented by Cory in the light most

favorable to him, as it must, the Court finds that Cory has, at
this stage, alleged facts sufficient for a reasonable jury to
find a causal connection between Defendant's conduct and the
alleged harm suffered.  Cory has alleged that, on several
occasions, Defendants confirmed that his 2002 returns had been
filed.  <u>See, e.g.</u>, Am. Compl. ¶¶ 39-44.  Relying on those
representations and his contractual agreement with Defendants,
Cory contends that he had no way of knowing that his 2002 returns
went unfiled or that he would personally need to take curative
action with the IRS.  As a result of Defendants' failure to
prepare and file the 2002 return, Cory claims to be facing, at
the very minimum, interest payments on unpaid tax due and
penalties for untimeliness that he may not otherwise have faced
had his returns been filed by the appropriate deadline.  A jury
could reasonably find these damages to be proximately caused by
Defendants and, therefore, Counts IX, X, XI, XIII, XIV, and XV
will survive.

    D.  <u>Conversion</u>

In Count XVII, Cory alleges that Daney tortiously converted
the $5,000 retainer which was originally given to Daney in the
form of a check.  Under Maryland law, "a conversion is any
distinct act of ownership or dominion exerted by one person over
the personal property of another in denial of his right or
inconsistent with it."  <u>Coots v. Allstate Life Ins. Co.</u>, 313 F.
Supp. 2d 539, 542-43 (D. Md. 2004) (quoting <u>Interstate Ins. Co.
v. Logan</u>, 109 A.2d 904, 907 (Md. 1954)).  Generally, damages

10

cannot be recovered for the conversion of money "unless the plaintiff seeks to recover specific segregated or identifiable funds." <u>Darcars Motors of Silver Spring, Inc. v. Borzym</u>, 841 A.2d 828, 834 n.3 (Md. 2004) (noting that a claim of conversion for money used as cash down payment for an automobile would not be recoverable because the seller "did not have an obligation to return the specific bills used for the down-payment" and that the proper vehicle for recovery is an action for breach of contract).

Here, Cory alleges that Daney deposited the $5,000 retainer check into his checking account and that the canceled check was returned.  Am. Compl. ¶¶ 175-78; Am. Compl. Ex. 1.  Cory does not claim that Daney possessed any specified currency which Daney had an obligation to return.  Rather, Cory claims that Daney was contractually obligated to apply the retainer amount to the debt owed by Cory for the preparation of specific tax returns and that Daney failed to fulfill that obligation.  Count XVII, therefore, fails to state a claim for conversion under Maryland law.  <u>See</u> <u>Brand Iron, Inc. v. Koehring Co.</u>, 595 F. Supp. 1037, 1040 (D. Md. 1984) (finding that "[f]ailure by a contracting party to pay the contract price or debt . . . is not conversion but merely breach of contract").

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss will be granted in part and denied in part.  Counts IV, VIII, XII, XVI, and XVII will be dismissed.  A separate order consistent with the reasoning of this Memorandum will follow.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: May 7, 2007